UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

KEVIN ANDERSON,

        Plaintiff,

    v.

KYLE THEIBERT, et al.,

        Defendants.

Case No. 2:15-cv-00771

**CHIEF JUDGE EDMUND A. SARGUS, JR.**
**Magistrate Judge Elizabeth Preston Deavers**

## OPINION AND ORDER

This matter is before the Court for consideration of the following: Defendants' Motion for Summary Judgment (ECF No. 55); Defendants' Motion in Limine (ECF No. 51); Plaintiff's Motion for Leave to File Sur-Reply to Response to Motion in Limine (ECF No. 62); Plaintiff's Motion for Summary Judgment (ECF No. 63); and Defendants' Motion to Strike Plaintiff's Motion for Summary Judgment (ECF No. 64). For the reasons stated below, Defendants' Motion for Summary Judgment (ECF No. 55) is **GRANTED**. Each of the remaining aforementioned motions (ECF Nos. 51, 62, 63, 64) is **DENIED as moot**.

## I. BACKGROUND

### A. Procedural History

Plaintiff Kevin Anderson ("Anderson" or "Plaintiff") initiated this action by filing a complaint on March 2, 2015 (ECF No. 1; the "Complaint" or "Compl."). Plaintiff brought suit against Defendants Kyle Theibert ("Theibert") and Aaron Collins ("Collins") individually, and in their capacity as officers of the Mount Vernon Ohio Police Department; and against the Mount Vernon, Ohio Police Department (the "Mount Vernon Police Department") (collectively, "Defendants"). Plaintiff alleges the following: (1) false arrest; (2) use of excessive force; (3)

failure to intervene when Theibert engaged in the use of excessive force; (4) failure to exercise care for Plaintiff's safety; and (5) the Mount Vernon Police Department, through ranking personnel and leadership, failed to properly train Theibert and Collins in proper investigation methods, proper arrest procedures, and proper procedures in transporting arrestees.

On February 5, 2016, Defendants filed an *in limine* motion to preclude the introduction of any evidence from Plaintiff regarding his medical conditions or medical treatment (ECF No. 51). Subsequently, on February 12, 2016, Defendants filed a Motion for Summary Judgment with respect to all claims (ECF No. 55). On February 23, 2016, Plaintiff filed a Motion for Leave to File a Sur-Reply to Defendants' Reply in further support of their Motion in Limine (ECF No. 62). On the same day, Plaintiff also filed a Motion for Summary Judgment (ECF No. 63). The next day, Defendants' filed a Motion to Strike Plaintiff's Motion for Summary Judgment as untimely (ECF No. 64). These matters are now ripe for review.

**B. Summary of Facts**

In the evening of October 27, 2014, Anderson was revving the engine of his motorcycle, outside his apartment in Mount Vernon, Ohio. Compl. at B. Bothered by the noise, a neighbor, Michael Gallogly ("Gallogly") came out of his apartment to confront Anderson. The two men argued and Gallogly went back into his home, emerging again with a knife. *Id.* Anderson then retrieved his own knife from his truck, which was parked on the street nearby. *Id.* Anderson's knife was sheathed in a black holster. *Id.* Anderson proceeded to brandish his knife as though it were a gun to "try and take control of the situation tactically." Deposition Transcript of Kevin Anderson, taken October 7, 2015, ECF No. 52-1 ("Anderson Dep.") at 83:19-22. Another neighbor, Sue Baker ("Baker"), and Gallogly's girlfriend, Gail Conway ("Conway") were also present at the time of the altercation. *Id.* at 147:11-13. Baker and Conway convinced Gallogly

to return to his apartment. *Id.* At that point, Anderson went back into his own apartment and called the police. *Id.* at 147:15-18.

On February 12, 2014, the Mount Vernon Police Department had received an alert from the Ohio Attorney General BCI Criminal Intelligence regarding Anderson. The alert stated that law enforcement should "exercise extreme caution" when coming into contact with Anderson due to prior statements by Anderson that he "thought about going on a homicidal rage." However, the alert also stated that "no direct threats were made towards law enforcement by Anderson." ECF No. 38-1, at p. 17.

Officers Theibert and Collins were dispatched in response to Anderson's call and arrived at the Shirley Avenue location in Mount Vernon at approximately 8:30 p.m. ECF No. 53-5, at p. 5. Gallogly admitted to threatening Anderson with a knife and was placed under arrest. *Id.* at p. 11. Witnesses at the scene then approached the officers and told them that, during the argument, Anderson had retrieved a gun from his truck and threatened Gallogly with it. While Theibert was speaking with witnesses, Anderson approached the group, disputing what the witnesses were recalling. Anderson was then handcuffed and placed in a police cruiser. Anderson then told the Theibert that he had brandished a knife, pretending it was a gun. *Id.* Both Gallogly and Anderson were arrested for aggravated menacing. *Id.*

## II. LEGAL STANDARD

### A. *Pro Se* Litigants

In this case, plaintiff is proceeding without the assistance of counsel. A *pro se* litigant's pleadings are to be construed liberally and are held to a less stringent standard than are formal pleadings drafted by lawyers. *Haines v. Kerner,* 404 U.S. 519, 520-21(1972); *see also Estelle v. Gamble,* 429 U.S. 97, 106 (1976). A court should make a reasonable attempt to read the

pleadings of a *pro se* litigant to state a valid claim on which the plaintiff could prevail, despite any failure to cite proper legal authority, confusion of various legal theories, poor syntax and sentence construction, or unfamiliarity with pleading requirements. *Ashiegbu v. Purviance,* 74 F. Supp. 2d 740, 749 (S .D. Ohio 1998) (citing *Hall v. Bellmon,* 935 F.2d 1106, 1110 (10th Cir. 1991)). "This standard does not mean, however, that *pro se* plaintiffs are entitled to take every case to trial." *Id.* (citing *Pilgrim v. Littlefield,* 92 F.3d 413, 416 (6th Cir. 1996)). "Indeed, courts should not assume the role of advocate for the *pro se* litigant." *Id.* (citing *Hall,* 935 F.2d at 1110). It is with this standard in mind that the instant motions will be decided.

**B. Summary Judgment**

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant has the burden of establishing that there are no genuine issues of material fact, which may be accomplished by demonstrating that the nonmoving party lacks evidence to support an essential element of its case. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23 (1986); *Barnhart v. Pickrel, Schaeffer & Ebeling Co.,* 12 F.3d 1382, 1388–89 (6th Cir. 1993). To avoid summary judgment, the nonmovant "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986); *accord Moore v. Philip Morris Cos.,* 8 F.3d 335, 340 (6th Cir. 1993). "[S]ummary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986).

In evaluating a motion for summary judgment, the evidence must be viewed in the light most favorable to the nonmoving party. *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 158–59

(1970); *see Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000) (stating that the court must draw all reasonable inferences in favor of the nonmoving party and must refrain from making credibility determinations or weighing evidence). Furthermore, the existence of a mere scintilla of evidence in support of the nonmoving party's position will not be sufficient; there must be evidence on which the jury reasonably could find for the nonmoving party. *Anderson*, 477 U.S. at 251; *see Copeland v. Machulis*, 57 F.3d 476, 479 (6th Cir. 1995); *see also Matsushita*, 475 U.S. at 587–88 (finding reliance upon mere allegations, conjecture, or implausible inferences to be insufficient to survive summary judgment).

**C. Qualified Immunity**

Section 1983 claims are subject to the affirmative defense of qualified immunity which, if applicable, shields individuals from liability. *Pearson v. Callahan,* 555 U.S. 223, 231 (2009). Qualified immunity protects state officials so long as "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818, (1982) (citations omitted). The doctrine balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly, and the need to shield officials from liability when they perform their duties reasonably. *Pearson,* 555 U.S. at 231. The accommodation for reasonable error exists because officials should not always err on the side of caution due to the fear of being sued. *Id.*

Analysis of qualified immunity entails two steps: (1) considering the allegations in the light most favorable to the party injured, whether a constitutional right has been violated; and (2) whether that right was clearly established. *Swiecicki v. Delgado,* 463 F.3d 489, 497 (6th Cir. 2009). The order of this inquiry is not mandatory, nor does a court need to reach both steps of the analysis. *Pearson,* 555 U.S. at 236.

## III. ANALYSIS

Plaintiff brings this action under Section 1983, which provides in relevant part as follows:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State ... subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress....

42 U.S.C. § 1983. To prevail on a claim under § 1983, a plaintiff must show that (1) a person (2) acting under color of state law (3) deprived him of rights secured to him by the United States Constitution or its laws. *Waters v. City of Morristown,* 242 F.3d 353, 358–59 (6th Cir. 2001). Because Section 1983 is a vehicle for vindicating federal rights, not a source of substantive rights itself, the first step in an action under Section 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver,* 510 U.S. 266, 271 (1994).

### A. False Arrest

A false arrest claim implicates "the Fourth Amendment right to be arrested only upon probable cause." *Crockett v. Cumberland Coll.*, 316 F.3d 571, 579–80 (6th Cir. 2003). Prevailing on a § 1983 false arrest claim thus "'requires a plaintiff to prove that the arresting officer lacked probable cause to arrest the plaintiff.'" *Sykes v. Anderson*, 625 F.3d 294, 305 (6th Cir. 2010) (quoting *Voyticky v. Village of Timberlake, Ohio*, 412 F.3d 669, 677 (6th Cir. 2005)).

Probable cause exists when the police have "'reasonably trustworthy information ... sufficient to warrant a prudent man in believing that the [suspect] had committed or was committing an offense.'" *Gardenhire v. Schubert*, 205 F.3d 303, 315 (6th Cir. 2000) (quoting *Beck v. Ohio*, 379 U.S. 89, 91 (1964)). "No overly burdensome duty to investigate applies to officers faced with the prospect of a warrantless arrest." *Logsdon v. Hains*, 492 F.3d 334, 341 (6th Cir. 2007). Nonetheless, "[p]robable cause determinations involve an examination of all

6

[the] facts and circumstances within an officer's knowledge at the time of an arrest." *Gardenhire*, 205 F.3d at 315. That is, "the initial probable cause determination must be founded on 'both the inculpatory *and* exculpatory evidence' known to the arresting officer." *Logsdon*, 492 F.3d at 341 (quoting *Gardenhire*, 205 F.3d at 318).

"Whether an officer is authorized to make an arrest ordinarily depends, in the first instance, on state law." *Lodgson*, 492 F.3d at 341 (quoting *Michigan v. DeFillippo*, 443 U.S. 31, 36 (1979)). Under Mount Vernon, Ohio codified ordinance 537.05, Aggravated Menacing:[1] "(a) No person shall knowingly cause another to believe that the offender will cause serious physical harm to the person or property of the other person. . . ."

The Defendants submit that the following, undisputed facts establish probable cause:

1. Theibert and Collins were informed by eyewitnesses at the scene that Anderson used a gun to threaten Gallogly.

2. Anderson then admitted that he handled his sheathed knife in such a way as to indicate it was a gun, with the intention of giving Gallogly the impression that he had a gun in order to take control of the situation.

3. Theibert relied on the witnesses' statements and Plaintiff's admission in determining probable cause for arrest.

In the Court's view, the officers had clear probably cause to arrest and detain Anderson. Witness testimony supported the charge of aggravated menacing. The Plaintiff also admitted to the officers that he had brandished his knife like a gun, with the intention of giving Gallogly the impression that he had a gun.

---

[1] Ohio law provides that an officer may arrest a suspect upon probable cause for the offense charged against Anderson, aggravated menacing. Ohio Rev. Code § 2935.03(A)(1) provides that "[a] sheriff, deputy sheriff, marshal, deputy marshal, municipal police officer, township constable, police officer ... shall arrest and detain, until a warrant can be obtained, a person found violating, within the limits of the political subdivision ... an ordinance of a municipal corporation, or a resolution of a township."

7

As a result, Defendants are entitled to summary judgment on Anderson's claim of false arrest.

**B. Excessive Force**

Plaintiff also claims that the Defendant Officers used excessive force upon him in violation of the Fourth Amendment. In *Graham v. Connor,* the Supreme Court defined the contours of a Fourth Amendment claim for excessive force. 490 U.S. 386 (1989). The Court stated: "Determining whether the force used to effect a particular seizure is 'reasonable' under the Fourth Amendment requires a careful balancing of 'the nature and quality of the intrusion on the individual's Fourth Amendment interests' against the countervailing governmental interests at stake.'" *Id*. at 396 (citations omitted). Indeed, the right to make an arrest "carries with it the right to use some degree of physical coercion or threat" to effect the arrest. *Id.* The "'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Id.,* citing *Terry v. Ohio,* 392 U.S. 1, 20-22 (1968). The "reasonableness" inquiry is judged under an objective standard. "[T]he question is whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Id.* The Court reiterated that "[n]ot every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers violates the Fourth Amendment." *Id.* (internal citation omitted).

Anderson claims that he suffered injuries to his wrists as a result of being placed in handcuffs when he was arrested. Compl. at D. He also alleges that he suffered mental anguish over loss of work and concern that his reputation was damaged. *Id*.

With respect to claims of excessive force due to tight handcuffing, the Sixth Circuit has held that a plaintiff "must allege some physical injury from the handcuffing, and must show that

officers ignored plaintiff's complaints that the handcuffs were too tight." *Lyons v. City of Xenia*, 417 F.3d 565, 575-76 (6th Cir. 2005). Here, none of the relevant facts surrounding Anderson's claim of excessive force are disputed. Anderson has never alleged that he told the officers his handcuffs were too tight. As a result, his claim does not satisfy the second requirement enumerated in *Lyons*. *Id.* at 575 (upholding the dismissal of a claim for excessive force because the plaintiff failed to allege that she complained to the arresting officer about the tightness of the handcuffs and the officer ignored her request). Because Aderson's claim for excessive force against Theibert fails, his claim against Collins for failure to intervene when Theibert used excessive force necessarily also fails.

Defendants are also entitled to summary judgment on Anderson's excessive force claim.

**C. Failure to Exercise Care**

Anderson has failed to identify any constitutional right that was violated as a result of the officers' alleged failure to exercise care in the course of his arrest. Anderson alleges Theibert called him a "dipshit" during the arrest. Compl. at C. However, there is no "clearly established" constitutional right that is violated by an unprofessional choice of words. Anderson additionally alleges that the officers subjected him to danger by failing to fasten his seatbelt and failing to stop at traffic lights when transporting him in their police vehicle. Compl. at C, D.

But, there is no constitutional right to be restrained by a seatbelt while transported in a police vehicle. Various federal courts have held that a failure to provide seatbelts during transport does not, by itself, constitute a risk of harm rising to the level of a constitutional violation. *Richard v. P.T.S. of America, LLC*, No. 3:14-cv-02308, 2015 WL 247883, at *2 (M.D. Tenn. Jan. 20, 2015) (citing *Smith v. Sec'y for the Dep't of Corr.*, 252 F. App'x 301, 303-4 (11th Cir. 2007); *accord Dexter v. Ford Motor Co.*, 92 F. App'x 637, 643 (10th Cir. 2004); *Ingram v.

9

*Herrington*, No. 4:06-CV-P65-M, 2007 WL 2815965, at *5 (W.D. Ky. Sept. 26, 20007); *Young v. Hightower*, No. 04-10309, 2007 WL 2214520, at *12-13 (E.D. Mich. July 27, 2007).

### D. Defendant Mount Vernon Police Department

It is well settled that a police department is an arm of the municipality. The Court construes the claims against the police department to be claims against the City of Mount Vernon. *Hale v. Vance*, 267 F. Supp. 2d 725, 737 (S.D. Ohio 2003); *Jones v. Marcum*, 197 F. Supp. Ed 991, 997 (S.D. Ohio 2002); *Lindow v. N. Royalton*, 661 N.E.2d 253, 258 (Ohio App. Ct. 1995). Moreover, no clearly established constitutional rights of Anderson were violated by Theibert and Collins, such that an examination of whether a City of Mount Vernon policy served as the motivating force for that violation. *See Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978) (political subdivision is liable for acts of its employees only for injuries resulting from an official policy or governmental custom that serves as the moving force of the constitutional violation).

### IV. CONCLUSION

For the reasons mentioned above, Defendants are entitled to summary judgment on all of their claims. Defendants' motion for Summary Judgment (ECF No. 55) is **GRANTED**. Defendants' Motion in Limine (ECF No. 51); Plaintiff's Motion for Leave to File Sur-Reply to Response to Motion in Limine (ECF No. 62); Plaintiff's Motion for Summary Judgment (ECF No. 63); and Defendants' Motion to Strike Plaintiff's Motion for Summary Judgment (ECF No. 64) are **DENIED as moot**.

IT IS SO ORDERED.

8-16-2016
DATE

EDMUND A. SARGUS, JR.
UNITED STATES DISTRICT CHIEF JUDGE

10